# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DONALD RIVERA,**

    **Plaintiff,**

**v.**                                                                                                                                        No. 16-cv-1095 MV/SMV

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Plaintiff's Motion to Dispute the Transcript of Record [Doc. 21], filed on May 3, 2017, and on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision, [Doc. 24], filed on June 20, 2017. Briefing is complete on both motions. [Docs. 22, 23, 27, 28]. The Honorable Martha Vázquez, United States District Judge, referred the case to me for proposed findings and a recommended disposition. [Doc. 25]. I recommend construing Plaintiff's Motion to Dispute the Transcript of Record [Doc. 21] as a motion to remand pursuant to 42 U.S.C. § 405(g) (sentence six) for new and material evidence. However, I recommend denying the motion because the evidence is either immaterial or duplicative. I further recommend denying Plaintiff's Motion to Reverse and Remand [Doc. 24] because Plaintiff fails to show that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence or is the product of an incorrect legal standard.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was before the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to 20 C.F.R. § 404.970(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096. Accordingly, here, the Court reviews the ALJ's decision considering the entire record, including the evidence submitted to the Appeals Council. Tr. 1–5, 863–64.

undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## **Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R.

§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Id.*

## Procedural Background

Plaintiff was born on December 8, 1953. Tr. 44. He served in the Air Force in the early 1970s where he was injured. Tr. 25. As a result, Plaintiff suffered back and mental health problems. Plaintiff reports that despite his conditions, he worked for 30 years at the Sandoval County Assessor's Office. Tr. 24, Tr. 855–56, 338–39. He retired on December 31, 2009. Plaintiff insists that he wanted to continue working for another ten years, but his impairments prevented him from continuing to work. He also reports that he retired due to "political pressure" from the Assessor in office at the time. [Doc. 1] at 2; [Doc. 24] at 2.

Plaintiff applied for a period of disability and disability insurance benefits on January 7, 2013. Tr. 14. He alleged a disability-onset date of November 13, 2013.[3] *Id.* His claims were denied initially and on reconsideration. Plaintiff requested a hearing before an ALJ. *Id.* ALJ Frederick E. Upshall, Jr., held a hearing on October 21, 2015, in Albuquerque, New Mexico.

---

[3] Originally, Plaintiff alleged an onset date of December 31, 2009. Tr. 14. However, at the hearing before the ALJ, through his attorney, Plaintiff amended his alleged onset date to November 13, 2013. *Id.* Counsel explained that the amendment would benefit Plaintiff in two ways. First, it would align with the finding of the Department of Veterans Affairs that Plaintiff was 100% disabled. Second, it would align with Plaintiff's turning 59 years and 11 months old, and that age would trigger a more favorable category of Medical Vocational Guidelines or "grid rules." Tr. 43–44. Before this Court, Plaintiff would like to undo the amendment and re-allege the 2009 onset date. [Doc. 28] at 1–2. I am unaware of any authority that would allow this Court to change the alleged onset date. The role of this Court is to review the Commissioner's final decision for substantial evidence and legal error. Plaintiff fails to show any error in the ALJ's decision to accept the amended onset date of November 13, 2013.

4

Tr. 14, 39. Plaintiff appeared in person with his attorney. Tr. 14, 39–42. The ALJ took testimony from Plaintiff and an impartial vocational expert ("VE"), Leslie J. White. Tr. 10, 63–65. The ALJ also considered the VE's responses to the ALJ's post-hearing, written interrogatories. Tr. 507–13; *see* Tr. 14.

The ALJ issued his unfavorable decision on June 6, 2016. Tr. 29. Initially, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015. Tr. 17. At step one he found that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There he found that Plaintiff suffered from the following severe impairments: "degenerative disc disease, osteoarthritis in right knee and hip, depression, and posttraumatic stress disorder (PTSD)." *Id.* At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 17–19.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 19–27. The ALJ found that, through his date last insured:

> [Plaintiff] had the [RFC] to perform a range of medium work as defined in 20 [C.F.R. §] 404.1567(c). He can lift up to 50 pounds occasionally and is able to lift and carry up to 25 pounds frequently. He is able to stand and/or walk for approximately 6 hours in an 8 hour workday, and is able to sit for approximately 6 hours in an 8 hour workday, with normal breaks. Pushing and pulling are limited only by the limitation on [Plaintiff]'s ability to lift and carry. He can frequently climb ladders, ropes or scaffolds, climb ramps or stairs, kneel and crawl. He is able to stoop and crouch occasionally. There are no manipulative or environmental limitations. [Plaintiff] is limited to unskilled work, involving only simple work-related decisions, with few, if any, changes in the

5

> work setting. He is limited to occasional interaction with the public, incidental to the work performed, and occasional interaction with co-workers. Supervision should be occasional, simple and direct.

Tr. 19. At step four the ALJ found that Plaintiff could not return to his past relevant work. Tr. 27. Accordingly, the ALJ proceeded to step five, where he relied on testimony by the VE to find that, based on Plaintiff's age, education, work experience, and RFC, he was capable of performing other jobs that exist in significant numbers in the national economy. Tr. 28–29. Ultimately, the ALJ found that Plaintiff was not under a disability as defined by the Act during the relevant time period, November 13, 2013, through December 31, 2015. Tr. 29. Plaintiff requested review from the Appeals Council, but that request was denied on July 28, 2016. Tr. 1. Plaintiff filed the instant action on October 4, 2016.[4] [Doc. 1].

## **Analysis**

Plaintiff's Motion to Dispute the Transcript of Record [Doc. 21] should be construed as a motion to remand pursuant to § 405(g) (sentence six). On careful review of all the evidence, I find that none of the evidence warrants remand. Additionally, I find that the ALJ's decision is supported by substantial evidence and is free of legal error. Remand is not warranted on any basis.

---

[4] Plaintiff was required to file his action in federal court within 60 days after notice of the Appeals Council's decision was mailed to him, *see* 42 U.S.C. § 405(g), plus an additional five days for mailing, 20 C.F.R. § 422.210(c). The Appeals Council's decision was mailed to Plaintiff on July 28, 2016. Tr. 1. Adding five days for mailing, he had 65 days, or until October 3, 2016, to initiate his action in this Court. He did not file his action until October 4, 2016—one day late. [Doc. 1]. However, the 60-day time limit in § 405(g) represents a statute of limitations, which is waivable. *Matthews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976). It is not jurisdictional. *Id.* Because the Commissioner has not raised the issue, she has waived it.

## I.  Plaintiff fails to show that remand is appropriate under sentence six.

Sentence six of 42 U.S.C. § 405(g) provides that a district court:

> may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  After a sentence six remand, the agency then assesses the new evidence, makes findings of fact, and issues a decision that is then subject to review by the court.  *Id*.  However, when ordering sentence six remand, the court does not address the merits of the agency's decision itself.  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *Pettyjohn v. Shalala*, 23 F.3d 1572, 1574 (10th Cir. 1994) (in a sentence six remand, the court does not rule in any way as to the correctness of the administrative determination).

In order to obtain a sentence six remand, a plaintiff must submit his new evidence to the court, and demonstrate both that it is material and that he has good cause for failing to incorporate such evidence into the record in the prior proceeding.  *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010).  Evidence is material if "the Secretary's decision might reasonably have been different had the [new] evidence been before him when his decision was rendered."  *Id.*  However, if the plaintiff has no good reason for failing to submit the evidence to the ALJ (or to the Appeals Council), then remand under sentence six is inappropriate.  *Id.* at 1149–50.  "'Good cause' is more than a desire to relitigate the same issues."  *Id.* at 1149 (internal quotation marks omitted).

Plaintiff complains that many documents are missing from the administrative record.  Plaintiff urges that the evidence should be considered.  [Doc. 24] at 9–10; [Doc. 28] at 3.

Plaintiff did not immediately submit copies of the records that he believes are missing. Over time, though, it appears that he has submitted copies of nearly everything. [Doc. 23] at 1, 2; [Docs. 23, 28]. Plaintiff argues that the following documents should be considered:

1. An exhibit that Plaintiff attached to his request for reconsideration, dated June 18, 2013. [Doc. 23] at 4.

2. Plaintiff's cover letter to the Social Security Administration ("SSA") dated Nov. 18, 2013, for a report from Dr. Tiernan. [Doc. 23] at 5.

3. Plaintiff's letter to SSA, dated June 27, 2016, asking for a copy of the hearing transcript and a copy of a questionnaire that he completed when he was examined by Dr. Young-Rodriguez on January 30, 2016. [Doc. 23] at 6.

4. Plaintiff's cover letter to SSA, dated July 8, 2016. [Doc. 23] at 7

5. An "exhibit A" dated August 5, 2016, that Plaintiff attached to his "Request for Review of Hearing Decision/Order." [Doc. 28] at 7.

6. Plaintiff's cover letter to SSA and four identical letters to different recipients, all dated August 22, 2016, and all asking for a copy of the questionnaire that he completed when he was examined by Dr. Young-Rodriguez on January 30, 2016. [Doc. 28] at 8–12.

7. Plaintiff's letter dated August 26, 2016, asking that his case be reopened and for new evidence to be considered. [Doc. 28] at 13.

8. Plaintiff's cover letter dated August 30, 2016, for new evidence to be considered. [Doc. 28] at 14.

9. Letter from Dr. Tiernan to SSA, dated August of 2016, excoriating the ALJ for rejecting his opinion and for adopting the opinion of Dr. Young-Rodriguez instead. [Doc. 28] at 15–20.

10. Records from PT First physical therapy office, dated Aug. 29, 2017. [Doc. 28] at 21–25.

11. Undated, unsigned Physical RFC form, which Plaintiff attributes to PT First. [Doc. 28] at 26–33, *see* [Doc. 28] at 4 (Plaintiff's attributing the form to PT First).

12. Records from NM Orthopaedics, dated September 1, 2016. [Doc. 28] at 34–37.

I have very thoroughly and carefully reviewed each and every document submitted by Plaintiff. I find that none is material. None would have changed the outcome of this case if it had been before the ALJ or the Appeals Council. For example, many of the documents are entirely extraneous. Plaintiff's cover letters that accompanied the submission of evidence are not material to the outcome of his case. Neither are his letters requesting copies of rules or a copy of the questionnaire. Some of the evidence seemed material at first blush, but once I reviewed the entirety of the administrative record, I discovered that it was actually duplicative. For example, Dr. Tiernan's letter dated August of 2016, lambasting the ALJ for denying the claim, is actually a recapitulation of arguments he had already submitted. *Compare* [Doc. 28] at 18 (arguing in August of 2016, that Dr. Young-Rodriguez's report should be accorded less weight because he did not review certain medical records), *with e.g.* Tr. 521 (making same criticisms in February of 2016). *See Maes*, 522 F.3d at 1097 ("[W]e will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete.").[5]

Like Dr. Tiernan's letter, the RFC assessment found at [Doc. 28] at 26–33, might have been material, except that it is unsigned and undated. There is nothing on the face of the document indicating who filled it out, what that person's credentials were, or what the author's relationship with Plaintiff was. Plaintiff himself attributes the assessment to PT First, but he offers nothing more specific than that. He does not indicate the name or credentials of the person who completed the form. For these reasons, I find that the RFC assessment is not material.

---

[5] Plaintiff argues that Defendant is somehow "in violation" because the medical release Plaintiff signed refers to "all" medical records. [Doc. 24] at 10; [Doc. 28] at 3. This argument is immaterial and frivolous.

9

There is one document that I have not reviewed. Plaintiff is adamant that he completed a questionnaire on January 30, 2016, when he was examined by Dr. Young-Rodriguez and that the questionnaire is not part of the record. Neither party has submitted a copy to this Court. It appears that neither has a copy. Plaintiff does not explain what information was contained in the questionnaire. He offers no persuasive explanation as to what the questionnaire would establish if it were present in the record. He fails to explain how the questionnaire (or its absence) makes any difference to this Court's review of the ALJ's decision. I find that Plaintiff fails to show that the questionnaire (or its absence) is material.

Ultimately, I find that remand for consideration of this evidence is not appropriate. Plaintiff's Motion to Dispute the Transcript of Record [Doc. 21] should be construed as a motion to remand under sentence six and denied.

## II.  Plaintiff fails to show reversible error in the ALJ's decision.

Plaintiff argues that the ALJ committed reversible error by relying on his "own [medical] opinion," rejecting Dr. Tiernan's opinion, adopting Dr. Young-Rodriguez's opinion, and considering the VE's responses to the written interrogatories. [Doc. 24] at 10–11; [Doc. 28] at 4.

### A.  There is no reversible error at step two or in the consideration of all Plaintiff's impairments.

Plaintiff argues that the ALJ failed to "include" all of his "injuries/impairments." [Doc. 24] at 3 (citing Tr. 17 (ALJ's step-two findings) and citing [Doc. 1] at 2 (Plaintiff's own list of his impairments). For example, Plaintiff argues that his "[military] service[-]connected injuries include: multiple spinal injuries—herniated discs, flattened disc, degenerated [sic] disc disease, s[c]iatica, an[n]ular tears, spinal stenosis, right lower extremity radiculopathy associated

10

with spinal injury, knee/hip injuries with osteoarthritis, anxiety mood stress disorder (claimed as PTSD) due to medical condition, etc." [Doc. 1] at 2. Whereas, at step two of the sequential evaluation process, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease, osteoarthritis in right knee and hip, depression, and [PTSD]." Tr. 17.

Plaintiff's challenge reflects a misapprehension about step two. There is no requirement that an ALJ list all of a Plaintiff's diagnoses. Rather, at step two, an ALJ determines which of the plaintiff's "medically determinable impairments" qualify as "severe" under the law. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ made that determination. More to the point, even if the ALJ omitted certain impairments at step two—which I do not necessarily find—the error would not be reversible. The ALJ did not find Plaintiff not disabled at step two. He found that Plaintiff had multiple "severe" impairments and proceeded through the sequential evaluation process. The ALJ went on to consider Plaintiff's back, hip, knee, and mental health problems in formulating his RFC. There is no reversible error. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

B. There is no reversible error in the evaluation of Dr. Tiernan's opinions.

The ALJ rejected Dr. Tiernan's opinions for several reasons. Tr. 20–21. First, the ALJ explained that Dr. Tiernan's opinions were based heavily on the disability rating system utilized by the Department of Veterans Affairs ("VA"), which is fundamentally different than the system utilized by the Commissioner. Tr. 20. Second, Dr. Tiernan opined that Plaintiff was entitled to benefits because of his age, gender, and the mere existence of back and mental health

impairments, but the ALJ explained that the existence of impairments does not establish functional limitations, much less disability in the social security context. *Id.* Third, the ALJ rejected Dr. Tiernan's opinions because they were not supported by any physical examination findings, such as strength findings, ranges of motion, etc. *Id.* Plaintiff argues that the ALJ erred in rejecting Dr. Tiernan's opinions. [Doc. 24] at 5, 10–11; [Doc. 28] at 4. I disagree.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)). However, when assessing a plaintiff's RFC, an ALJ must explain what weight he assigns to each medical opinion and why. Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *5. In weighing medical opinions, the ALJ may consider a variety of factors, such as: whether the source has examined the plaintiff, whether the source qualifies as a treating source, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the medical opinion is supported, whether the opinion is consistent with the other evidence of record, whether the source is a specialist, or any other factors that tend to support or contradict the opinion. § 404.1527(c). Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor. SSR 06-03p, 2006 SSR LEXIS 5 at *5. "[T]he ALJ's decision

is sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted).

Here, there is no error in the ALJ's determination that Dr. Tiernan did not qualify as a "treating physician" under the law and, therefore, that his opinion was not entitled to "controlling weight." The record contains overwhelming support for the ALJ's determination that Dr. Tiernan did not qualify as Plaintiff's "treating" physician. *See* Tr. 736–48. Dr. Tiernan's records do not evidence any treatment for Plaintiff's ailments but, instead, evidence Dr. Tiernan's extensive efforts to advocate on Plaintiff's behalf to obtain disability benefits from the VA and from the SSA. *See* 20 C.F.R. § 404.1527(a)(2) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source."). Moreover, the ALJ's other reasons for according Dr. Tiernan's opinions "little weight" are legally adequate and supported by substantial evidence.

There is one additional reason the ALJ gave for rejecting Dr. Tiernan's opinions. The ALJ found that Dr. Tiernan had not opined as to any specific functional limitations. Tr. 20. This particular finding is in error because Dr. Tiernan did opine as to Plaintiff's specific functional limitations. Tr. 785–87. Dr. Tiernan completed a Medical Assessment of Ability to do Work-Related Activities (Physical). *Id.* This erroneous finding notwithstanding, the ALJ's evaluation of Dr. Tiernan's opinions passes muster. He applied the correct legal standard, and

13

his other findings are supported by substantial evidence. There is no reversible error in the ALJ's evaluation and rejection of Dr. Tiernan's opinions.

### C. There is no reversible error in the ALJ's evaluation and adoption of Dr. Young-Rodriguez's opinion.

Plaintiff argues that Dr. Young-Rodriguez's report is "erroneous" and "without any proof." [Doc. 24] at 5. Plaintiff complains that the ALJ "made [his] own opinion, (without any proof), to find [Plaintiff's RFC.]" [Doc. 24] at 6.[6] Plaintiff challenges the ALJ's adoption of Dr. Young-Rodriguez's opinion, apparently, on two grounds. [Doc. 24] at 10–11. First, Plaintiff insists the questionnaire he completed during his visit with Dr. Young-Rodriguez is missing from the record. Second, Plaintiff argues that Dr. Young-Rodriguez did not consider Plaintiff's medical records. Thus, Plaintiff disagrees with the ALJ's adoption of Dr. Young-Rodriguez's opinion. Plaintiff's arguments are not persuasive.

First, Plaintiff fails to show any reversible error due to the absence of the questionnaire. Before this Court, Plaintiff must show that the ALJ's decision is not supported by substantial evidence or that it is the product of legal error. Plaintiff does not explain what information was contained in the questionnaire. He offers no explanation as to what the questionnaire would establish if it were present in the record. He fails to explain how the questionnaire (or its

---

[6] In his Motion, Plaintiff cites to the arguments he and Dr. Tiernan made to the ALJ in opposition to Dr. Young-Rodriguez's report. [Doc. 24] at 6 (citing 496–98 (Plaintiff's letter to his own attorney dated February 22, 2016, asking about the questionnaire and expressing concern that Dr. Young-Rodriguez did not review all of Plaintiff's medical records in formulating his opinion), Tr. 502 (Plaintiff's letter to the ALJ, dated March 24, 2016, "disagree[ing], oppos[ing], and object[ing] to Dr. Young-Rodriguez's report because the doctor "may not have reviewed [Plaintiff's] medical records"), Tr. 519–21 (Dr. Tiernan's letter dated February 19, 2016, expressing the view that Dr. Young-Rodriguez's report should be removed from the file because Dr. Tiernan did not believe Dr. Young-Rodriguez had reviewed Plaintiff's military record (presumably the one dated 1974–75) or Dr. Tiernan's own records), 863–64 (Dr. Tiernan's letter dated June 1, 2016, repeating his concerns about Dr. Young-Rodriguez's report)).

absence) makes any difference to this Court's review of the ALJ's decision. I find that Plaintiff fails to show that the questionnaire (or its absence) is material.

Second, the ALJ was entitled to rely on Dr. Young-Rodriguez's opinion, which was based on the doctor's examination of Plaintiff. Tr. 22–23 (ALJ's findings); Tr. 843–52 (doctor's report). Plaintiff's challenge to Dr. Young-Rodriguez's report is that the doctor may not have reviewed (or did not review) Dr. Tiernan's records or the medical records from Plaintiff's military service in 1974 and 1975. I understand that these may be reasons for according less weight to Dr. Young-Rodriguez's opinion. However, this Court cannot re-weigh the evidence. Instead, before this Court, Plaintiff has the burden to show that the ALJ committed reversible legal error or that his findings are not supported by substantial evidence. As to the weighing of Dr. Young-Rodriguez's opinion, Plaintiff does not meet that burden. Even if Dr. Young-Rodriguez did not review Plaintiff's medical records—which I do not necessarily find—*the ALJ* reviewed those records. And to a certain extent, the ALJ was persuaded by those records. The ALJ assessed a more restrictive RFC than Dr. Young-Rodriguez's, explicitly due to "diagnostic imaging studies showing degenerative changes and mild-to-moderate stenosis support at least some extent of [Plaintiff]'s alleged symptoms." Tr. 23. There is no error in the ALJ's evaluation of Dr. Young-Rodriguez's opinion.

### D. There is no error in the ALJ's consideration of the VE's answers to written interrogatories.

Plaintiff objects to the VE's answers to written interrogatories propounded by the ALJ after the hearing. [Doc. 24] at 7, 8. Plaintiff argues that "[t]he [interrogatories] seem to be misleading, based on assumptions, and seem[] irrelevant to [his] case[,] etc[.]" [Doc. 24] at 7.

Plaintiff complains that the VE's testimony was based on a hypothetical individual. [Doc. 24] at 9. These arguments provide no ground for reversal. The ALJ was entitled to rely on the VE's responses to the written interrogatories. *See* Social Security Ruling 96-9p, 1996 *27 n.10 ("At the hearings and appeals levels, vocational experts (VEs) are vocational professionals who provide impartial expert opinion during the hearings and appeals process either by testifying or by providing written responses to interrogatories. A VE may be used before, during, or after a hearing."); *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) (recognizing that a VE's testimony can constitute substantial evidence to support an ALJ's finding on non-disability). There is no error.

### E. Plaintiff's other challenges to the ALJ's RFC assessment (and ultimate finding of non-disability) are not persuasive.

Plaintiff challenges the ALJ's RFC assessment. In making the RFC assessment, the ALJ relied in part on Plaintiff's own responses to certain Function Reports. Tr. 26. Plaintiff argues that his responses were actually qualified. [Doc. 24] at 7. For example, on the 2011 Function Report, Plaintiff reported that his ability to lift and carry "depend[ed] on the degree of [his] pain and varie[d] daily depending on [his] activity. [He could not] lift more than 30 to 40 pounds at [his] lowest degree of pain." [Doc. 24] at 7 (quoting Tr. 371 (Plaintiff's 2011 function report)). On the 2014 Function Report, Plaintiff indicated that, "[he could not] lift more than 40 lbs[.] at [his] lowest level of pain for more than once at a given time." *Id.* (quoting Tr. 417 (Plaintiff's 2013 function report)). Plaintiff further argues that his doctor has ordered that he not lift more than 5 pounds. [Doc. 24] at 9 (citing Tr. 476 (military medial record from January of 1975 limiting Plaintiff to lifting no more than "5 lbs x 30 days"); and citing Tr. 786 (Dr. Tiernan's

report dated August 12, 2015, limiting Plaintiff to lifting no more than 5 pounds)). These records could support a more restrictive RFC assessment than the one assessed by the ALJ. But that is not the standard. Here, I must review the ALJ's determination that Plaintiff can perform medium work (i.e., lift up to 50 pounds occasionally and is able to lift and carry up to 25 pounds frequently) for substantial evidence. Dr. Young-Rodriguez's report constitutes the substantial evidence. Plaintiff's 2011 and 2013 functions reports, along with Dr. Tiernan's limitation and the 1975 limitation do not overwhelm Dr. Young-Rodriguez's report.

Next, the ALJ found that Plaintiff's "unwillingness to treat his symptoms undermines the persuasiveness of his allegations as to the severity of [his] symptoms." Tr. 20. Plaintiff challenges this finding. [Doc. 24] at 7. Plaintiff explains that he does not like the side effects of medications. He further explains that he has spinal injuries and annular tears, so he cannot have epidural injections. *Id.* I am not persuaded that the ALJ erred. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing credibility, an ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief"); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ reasonably noted the claimant did not take prescription pain medication); *Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999) (ALJ's discounting of symptom testimony supported by evidence that the claimant took only aspirin).

Additionally, Plaintiff complains that the ALJ was wrong to attribute his retirement from the Sandoval County Assessor's Office to eligibility for retirement rather than disability. Plaintiff insists that he retired due to his service-related injuries and "political pressure." [Doc. 24] at 7–8; Tr. 528. Plaintiff "feel[s] criticized by Defendant for working as long as he

could in order to make a living under his suffering, crippled, permanent medical condition." [Doc. 24] at 9. There is no error. Substantial evidence supports the ALJ's finding that Plaintiff left his work at the assessor's office for reasons other than disability. *See* Tr. 26, 817, 823. Moreover, it was legally appropriate for the ALJ to consider why Plaintiff left his last place of employment. *See* 20 C.F.R. § 404.1529(c)(3) (an ALJ must consider evidence about a claimant's prior work record); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (indicating that a claimant's admission that she did not leave employment as a result of a health-related impairment was relevant to a determination of disability).

Next, Plaintiff insists that he cannot perform "medium duty jobs" without severely aggravating his spinal injuries. He says that he had tried two such jobs and had to quit them both. [Doc. 24] at 8. However, Plaintiff does not describe these jobs in any way. He does not say when he had the jobs, where they were, what his duties were, or anything specific about the circumstances of his having to quit. He cites to more than a dozen pages in the record and among the extra-record materials. *Id.*[7] I have read each and every page. They establish that

---

[7] Plaintiff cites to the following: Tr. 528 (Plaintiff's May 3, 2016 letter to ALJ Upshall reporting that he cannot perform the work identified by the VE because he attempted it and failed "over 44 years ago" when we was in high school and also when we was serving in the military prior to his weapons-loading injury); Tr. 27 (ALJ's findings); Tr. 58, 61 (Plaintiff's testimony at the hearing that he could not keep up with the demands of his job due to his medical conditions); Tr. 144–45 (Plaintiff's attachment to his request for reconsideration, dated March 7, 2011, alleging that he had worked "jobs that required physical labor and . . . had to resign because they ag[gra]vated [his] back injury and resulted in pain and suffering."); Tr. 153 (Plaintiff's request for reconsideration dated June 18, 2013, maintaining that he could not "do[] the physical labor required [of] the appraisal work"); [Doc. 23] at 4 (Plaintiff's purported attachment to his June 18, 2013 request for consideration, which asserts that he is not physically capable of returning to his work at the assessor's office); Tr. 317 (Plaintiff's responses to a Disability Report, explaining why he stopped working at the assessor's office); Tr. 374, 381(Plaintiff's 2013 Function Report, describing how he believes his conditions preclude him from physical labor or "office jobs"); Tr. 635 (one page from a June 3, 2011 note from the VA, which reports that Plaintiff left his job at the assessor's office due to retirement eligibility and due to his back condition); Tr. 696–98 (letter from Dr. Tiernan to the VA, dated November 14, 2013, advocating for a higher disability rating along with an excerpt from a VA medical record, which indicates that Plaintiff's back condition affects his ability to work and ultimately finding Plaintiff "not employable"); [Doc. 23] at 5 (Plaintiff's

Plaintiff has been consistent in his reports that his back keeps him from performing physical work. However, none of these documents offers anything more specific than his allegation that he has worked two "medium duty jobs" and had to quit them both. These records do no persuade me that the ALJ erred in assessing Plaintiff's RFC.

Finally, Plaintiff argues that the ALJ did not "order tests/exams to prove Plaintiff['s RFC]," such as an RFC assessment by a physical therapist. [Doc. 24] at 9. However, the ALJ, in fact, did order an exam to inform his assessment of Plaintiff's RFC. Dr. Young-Rodriguez's examination and report serve that purpose. Furthermore, there is no requirement for any report by a physical therapist in this case. In fact, a physical therapist is not an "acceptable medical source" under the relevant regulations. This argument is meritless.

## **Conclusion**

Plaintiff's Motion to Dispute the Transcript of Record [Doc. 21] should be construed as a motion to remand pursuant to sentence six. I have reviewed all of the evidence, but none warrants remand. The motion should be denied. Additionally, I find that the ALJ's decision is supported by substantial evidence and is free of legal error. Remand is not warranted on any basis.

---

cover letter to SSA, dated November 18, 2013, submitting documents and providing the status of his disability claim with the VA); Tr. 703 (Plaintiff's March 21, 2014 "Statement in Support of Claim" for VA benefits, alleging that he cannot perform a job with physical labor and also cannot sit for long periods of time); Tr. 721 (one page from an April 7, 2014 note from the VA, reflecting Plaintiff's report that his back problems keep him from sitting for long periods or performing physical labor); Tr. 817 (one page from an November 25, 2014 note from the VA, reflecting Plaintiff's report that his back problems keep him from sitting for long periods or performing physical labor).

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Plaintiff's Motion to Dispute the Transcript of Record [Doc. 21] be construed as a motion to remand pursuant to sentence six and **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 24] be **DENIED**, and the Commissioner's final decision, **AFFIRMED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1.** **If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**